UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC GRANT,

       Plaintiff,

v.

       Civil Case No. 16-11690
       Honorable Linda V. Parker

JOHNSON ELECTRIC NORTH
AMERICA, INC.,

       Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 34) AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 35)

Plaintiff Eric Grant ("Plaintiff") filed this lawsuit alleging that Defendant Johnson Electric North America, Inc. ("Johnson Electric") breached its non-compete agreement, whereby Defendant would compensate Plaintiff for a non-compete period of twenty-four months. Presently before the Court are the parties' cross motions for summary judgment, filed May 8, 2017 and May 12, 2017. (ECF Nos. 34 & 35.) The motions have been fully briefed. For the reasons set out below, the Court denies the motions for summary judgment.

**I.    Factual and Procedural Background**

Johnson Electric is a provider of motion subsystems and components for automotive, industrial and medical applications, based in North America with an operating facility in Plymouth, MI. (ECF No. 35 at Pg ID 392.) Johnson Electric is a

1

subsidiary of Johnson Electric Manufactory, Inc. ("JEMI"), which is based in Hong Kong. (*Id.*)

Subject to an employment agreement, Plaintiff began working for Johnson Electric on October 1, 2013 as an Engineer Expert ETM. (ECF No. 1 at Pg ID 2-3.) The employee agreement included a non-compete clause. The non-compete provided the following:

> You shall not so as to directly compete with any subsidiary entities within the Company during the period of 12 months after the date of termination of your employment, carry on or be directly or indirectly engaged or concerned or interested whether as principal, agent shareholder, investor, director, employee or otherwise, in any business or activity carried on by subsidiary entities within the Company as at, or during the 12 month period immediately prior to, the date of termination of your employment, in which business or activity you were directly concerned in the course of your employment as at, or during the 12 month period immediately prior to, the said date of voluntary termination of employment.

(ECF No. 35 at Pg ID 393.)

On June 27, 2014, Plaintiff and Johnson Electric entered into a new employment agreement for additional duties and responsibilities with increased pay. (ECF No. at Pg ID 3.) On January 23, 2015, Eric Li, IP counsel for JEMI, notified Johnson Electric employees of the launch of the Intellectual Property Management ("IP Platform") that Johnson Electric employees would use to submit, track, and manage Johnson Electric's intellectual property. (ECF No. 35-3 at Pg ID 624; ECF No. 1 at Pg ID 3; ECF No. 45 at Pg ID 1331.) Prior to the launch, the engineers emailed their invention ideas to a designated JEMI employee in Hong Kong. (ECF

2

No. 34 at Pg ID 247.) In order to access the new system, the user had to "agree" to the terms of the user agreement, which appeared as a pop-up screen. Plaintiff alleged he first accessed the IP Platform in early 2015, sometime after entering into his new employment agreement. (ECF No. 34-5 at Pg ID 319-20.) Plaintiff testified that upon seeing the user agreement, he decided to discuss the terms with his wife later that night before accepting. (ECF No. 34-5 at Pg ID 320.) Plaintiff stated he accepted the user agreement the following day. (*Id.*)

The user agreement included a non-compete clause that provided a non-compete period of twenty-four months, expanded the scope of prohibited activities and increased the amount of damages for breach of the non-compete agreement. (ECF No. 1 at Pg ID 3.) It also provided a compensation provision, requiring Johnson Electric to provide Plaintiff with monthly compensation during the twenty-four month period at an amount equal to Plaintiff's average monthly salary during the twenty-four months prior to his termination. (*Id.*) According to Plaintiff, this non-compete clause constituted a binding agreement between Plaintiff and Johnson Electric.

Stephen Nelson, Johnson Electric's Senior Engineer Manager and designated Rule 30(b)(6) representative, testified that when he first saw the prompt he took a copy to Ella Guidulgi, former human resource representative, because he was concerned with the language. (ECF No. 35 at Pg ID 250.) However, she was not familiar with the agreement so Mr. Nelson disregarded it and assumed the user agreement did not apply to Johnson Electric employees. (*Id.*)

Plaintiff's employment relationship with Johnson Electric ended on February 1, 2016, but Plaintiff refused to sign the separation agreement because it varied materially from the non-compete clause in the user agreement. (ECF No. 35 at 400.) Specifically, it did not state that Johnson Electric would owe Plaintiff any compensation for the twenty-four month period following his termination. (*Id.*) On February 18, 2016, after corresponding with Plaintiff, Human Resource Manager Jillian Czlapinski forwarded Plaintiff an email stating the pop-up associated with the IP Platform was China specific and did not apply to Johnson Electric's North America employees. (*Id.*)

Although Plaintiff complied with the terms of the non-compete clause, Johnson Electric has not made any payments to Plaintiff and stated it does not intend to make any future payments. To support its position, Johnson Electric alleges it has no record of who clicked "agree" or "disagree" when presented with the prompt because it did not intend Johnson Electric employees to access it. (ECF No. 35-3 at Pg ID 590-91.) Further, Johnson Electric argues Li drafted the agreement and Billy Ng, Senior Legal Counsel for JEMI, approved it. (ECF No. 35 at 396.) Johnson Electric contends it did not know the non-compete clause would be presented to its employees.

On May 11, 2016, Plaintiff initiated this action for breach and anticipatory breach of the non-compete agreement. Plaintiff claims he is entitled to $315,825.36 in damages, which represents Plaintiff's average monthly salary of $13,159.39 for a twenty-four month period, February 2014 through February 2016. The parties filed

4

cross motions for summary judgment on May 8, 2017 and May 12, 2017. (ECF Nos. 34 & 35.) The motions have been fully briefed. For the reason stated below, the Court denies the parties' cross motions.

## II. Standard of Review

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty*

5

*Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

### III. Analysis

The parties filed cross motions for summary judgment. Plaintiff raises three arguments to support his claim for summary judgment. First, the unambiguous language of the contract mandates compensation. Second, the parties mutually assented to be bound to the provisions. Finally, the non-compete agreement is not exclusive to Chinese employees because no limitation is found anywhere in the contract. Johnson Electric advances two arguments in support of its motion for summary judgment: the contract is unenforceable because Johnson Electric never assented to the terms; and assuming the contract is valid, Johnson Electric did not violate the terms.

In Michigan, determining and enforcing the parties' intent is the primary goal of contract interpretation. *See Ford Motor Co. v. Kahne*, 379 F. Supp. 2d 857, 868 (E.D. Mich. July 28, 2005) (citing *Old Kent Bank v. Sobczak*, 243 Mich. App. 57 (Mich. Ct. App. 2000). To determine intent, courts read the agreement as a whole and

6

apply the plain language of the contract. *Id.* "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Roberts v. Hbpo N. Am.*, No. 329325, 2016 Mich. App. LEXIS 2038, at *3 (Mich. Ct. App. Nov. 8, 2016). "[I]f two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous. Further, courts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity or in order to declare an ambiguity." *Klapp v. United Ins. Group Agency*, 468 Mich. 459, 467 (2003). "Instead, contracts must be 'construed so as to give effect to every word or phrase as far as practicable.'" *Id.*

Any ambiguities in the contract should be construed against the drafter, or the party adopting the document. *See Fayettville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). However, a contract should be construed against the drafter only after relevant extrinsic evidence has left the jury unable to make a determination. Ultimately, an ambiguous contract is a question of fact that must be submitted to the jury. *See Klapp*, 468 Mich. at 453-54; *Safeco Ins. Co. of Am., Inc. v. Zervous Group, Inc.*, No. 00-71518, 2002 U.S. Dist. LEXIS 21971, at * 19 (E.D. Mich. Oct. 31, 2002).

The non-compete clause at issue stated the following:

4.2 Non-competition after Leaving the Company

7

(i) I agree that for twenty four months (the "Non-competition Period") commencing from the date immediately following the date of leaving the Company for whatever reason, I shall not engage in the following work: (1) directly or indirectly invest or establish any organization that engages in competitive business with the Company, or participate in the management and operation of any such organization; (2) hold a position in a competitor or provide the competitor with any service; or (3) engage in competitive business directly or indirectly in any other way.

(ii) My non-performance of the obligations under the subsection 4.2(i) shall be deemed a breach of the Commitment. I agree to pay compensation to Company for damages caused by such breach of Commitment and if the damages are unable to be calculated any income gained by this breach shall be owned by the Company together with reasonable fees incurred by the Company due to such breach.

(iii) The Company agrees to make economic compensation (the "Non-competition Compensation") to me during the Non-competition Period. The Non-competition Compensation shall be calculated as follows: one month salary calculated as the average monthly base salary over twenty four months prior to my leave times twenty four months (average one month salary x 24) to be paid by Company to me in installments. In case my employment with Company is less than 24 months then the average one-month salary will be calculated as the average monthly salary over the period of my employment with Company. In case I have provided adequate notice of my leaving the company and the date of such departure is definitive, the first installment payment of the Non-competition Compensation shall be made by the Company to me on the first of the month following the first full month after such definite date; otherwise, the first installment payment of the Non-competition Compensation shall be made by the Company to me within one month after the date when I receive the termination notification issued by the Company. I acknowledge and agree that I am neither entitled to any Non-competition Compensation nor can I rely on any representation that I am entitled to Non-competition Compensation.

(ECF No. 34-11 at Pg ID 358.) Plaintiff argues that when read in its entirety, the contract creates an ambiguity because majority of the text bestows an entitlement to a monetary benefit, whereas, the last sentence denies the same entitlement. The Court agrees. Unlike what Defendant advances, the Court cannot read part of the agreement in isolation. *See Roberts*, 2016 Mich. App. 2038 at *4. Therefore, the Court finds the two provisions in the contract are irreconcilable.

Plaintiff offers that because Johnson Electric has failed to present extrinsic evidence as to the intent behind the agreement, he is entitled to summary judgment. However, the Court finds that this is a matter better suited for the jury. "[W]here its meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions." *Klapp*, 468 Mich. at 454. Extrinsic evidence, such as how the agreement has applied in the past, how the agreement has applied to other Johnson Electric employees who clicked "agree" since Plaintiff's termination, and deposition testimony from executives describing Johnson Electric's conduct and past practices, could help the trier of fact in determining the intent behind the contract. Moreover, Johnson Electric stated that it intends to show its employees' conduct to support its claims regarding intent at trial.

9

Further, it is unclear whether "Company" refers to Johnson Electric or JEMI, and, if the user agreement was intended to apply to Johnson Electric's Chinese employees. "In order to form a valid contract there must be a meeting of the minds on all material facts." *Ford Motor Co.*, 379 F. Supp. 2d at 868. "Whether there was mutual assent or a 'meeting of the minds' between the contracting parties is a question of fact." *Id.* at 869 (quoting *Martin v. DeYoung*, 232 Mich. 112 (Mich. 1925)); *Calhoun Cnty. v. Blue Cross & Blue Shield*, 297 Mich. App 1, 13 (Mich. Ct. App. June 5, 2012) ("Where mutual assent does not exist, a contract does not exist."). It is clear from the parties' positions that whether there was mutual assent is a disputed fact. Plaintiff alleges mutual assent existed because Johnson Electric had a duty to know the terms of the agreement. However, Defendant argues that it was unaware an agreement even existed within the IP Platform prior to Plaintiff's access. Although Plaintiff takes the position that Johnson Electric should have known what was in the agreement because it "tendered" it, this is not a matter of Johnson Electric being aware of an agreement and failing to review the terms. Plaintiff has presented no evidence that Johnson Electric was aware the user agreement existed prior to Plaintiff accessing the IP Platform. Similarly, Defendant has not presented any evidence that the agreement only applied to Chinese employees. If the non-compete clause was, in fact, intended for Chinese employees, as Defendant attempts to argue, the parties lacked mutual

10

assent, and this provision does not apply to Plaintiff. Accordingly, mutual assent has not been established, and this issue should be submitted to the jury.

Alternatively, Defendant relies on *Meyer v. AmerisourceBergen Drug Corp.*, 264 F. App'x 470, 475 (6th Cir. Feb 13, 2008) (unpublished) for the proposition that the non-compete clause in dispute was an illusory promise. The Sixth Circuit has stated that a promise that makes performance optional is illusory and unenforceable. *Id.* However, unlike *Meyer*, the language throughout the disputed provision is mandatory. In *Meyer*, "may" was used consistently throughout the agreement, making it unambiguous that performance was optional. As such, the trial court found there was no breach because the contract was an illusory promise and unenforceable. Here, the Court does not find the language in the disputed clause unambiguous like that in *Meyer*. Likewise, the Court does not find that performance was optional, creating an illusory promise and effectively an unenforceable contract.

Ultimately, the Court finds there are triable issues of fact, including the intent behind the non-compete clause and whether mutual assent existed between the parties. Therefore, because the agreement cannot be read in reasonable harmony, the Court denies the parties' cross motions for summary judgment. *See Robert*, 2016 Mich. App. LEXIS 2038, at *5.

IV. **Conclusion**

Accordingly,

**IT IS ORDERED** that the motions (ECF Nos. 34 & 35) are **DENIED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: March 19, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 19, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury  
Case Manager